UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PETER SALVADOR MEDINA,<br><br>                Plaintiff,<br><br>     v.<br><br>PHILLIP VALDEZ; CORRECTIONS CORPORATION OF AMERICA; IDAHO DEPARTMENT OF CORRECTION; and IDAHO PAROLE BOARD;<br><br>                Defendants. | Case No. 1:08-CV-00456-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Motion to Dismiss (Dkt. 42) filed by Defendants Corrections Corporation of America (CCA) and Phillip Valdez (collectively referred to as CCA Defendants). Also pending is Plaintiff's Motion for Sanctions against the CCA Defendants, the Idaho Department of Correction and the Idaho Commission of Pardons and Parole (collectively referred to as IDOC Defendants). (Dkt. 40.) Having reviewed the record and otherwise being fully informed, the Court enters the following Order.

# CCA DEFENDANTS' MOTION TO DISMISS

**1.  Background**

Defendant Corrections Corporation of America is a private out-of-state corporation that manages the Idaho Correctional Center (ICC), under contract with the Idaho Department of Correction to house and supervise Idaho state inmates.  Defendant Philip Valdez was the warden of ICC at the time Plaintiff was housed there as an inmate. Plaintiff is now on parole.

At the time the allegations in the Complaint arose, Plaintiff was enrolled in the Therapeutic Community program at ICC and was told he would be eligible for parole once he completed the program. However, Plaintiff experienced difficulties in the program due to his PTSD and bipolar disorder. He alleges he was removed from the Therapeutic Community program because of these mental health diagnoses, and as a result his parole was delayed.

Plaintiff alleges that Defendants violated Title II of the Americans with Disabilities Act (ADA) by failing to provide a Therapeutic Community alternative in which he could participate while receiving mental health treatment. (Initial Review Order at 2-3, Dkt. 5.) On April 20, 2010, the CCA Defendants filed their Motion to Dismiss, arguing that CCA is not a "public entity" and therefore Title II of the ADA does not apply to it. (Defendants' Memorandum in Support of Motion to Dismiss at 5-9, Dkt. 42-1.) They also argue that Plaintiff's claims for injunctive relief are moot because Plaintiff was transferred out of ICC and later paroled, and that Defendant Valdez cannot be sued in his

**MEMORANDUM DECISION AND ORDER - 2**

individual capacity under Title II. (*Id.* at 3-5, 9-10.) Claims against the IDOC Defendants are not at issue currently.

2.  **Standard of Law**

The CCA Defendants seek dismissal of all of Plaintiff's claims against them. Under Rule 12(b)(6), a motion to dismiss is properly granted where the complaint does not state a cognizable legal theory or a claim lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990.) Here, the facts relevant to the Motion to Dismiss are undisputed; the parties argue only whether the statute applies to the facts at hand.

3.  **Discussion of Claims Against CCA**

The CCA Defendants argue they are entitled to summary judgment on the ADA claims because CCA is not a "public entity" under the plain language of the statute. For the reasons that follow, the Court agrees with Defendants' interpretation of the statute.

Title II of the ADA applies to an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The Supreme Court has held that the plain language of Title II of the ADA extends to prison inmates who are deprived of the benefits of participation in state-run prison programs, services, or activities because of a physical disability. *See Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998).

*Yeskey*, however, did not involve a prison run by a private corporation

**MEMORANDUM DECISION AND ORDER - 3**

incarcerating state prisoners pursuant to a government contract. For such a private corporation to be subject to suit under Title II, the corporation must be a "public entity" as defined in the statute. The term "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). The specific question in this case is whether CCA, a private corporation, is an "instrumentality" of the state.

Statutory interpretation must always begin with the plain language of the statute. *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008). "But the text is only the starting point." *Kelly v. Robinson*, 479 U.S. 36, 43 (1986). In construing a statute, courts "must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Id*. "If the statute's terms are ambiguous, [courts] may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1133 (9th Cir. 2009) (internal quotation marks omitted).

The CCA Defendants argue that private companies are not public entities under Title II even if they perform government functions pursuant to a state contract. The issue has not been decided by the Ninth Circuit. *See Gutierrez v. Valdez*, No. 1:09-464-REB, Initial Review Order at 5 (Dkt. 7), 2010 WL 529493, *2 (D. Idaho Feb. 9, 2010) ("It appears unsettled in the Ninth Circuit whether private entities performing the services of a public entity are susceptible to suit under Title II of the ADA."). This Court has found no controlling authority as to whether a private entity performing a public function can ever

**MEMORANDUM DECISION AND ORDER - 4**

be deemed a "public entity" as statutorily defined in the ADA.

Defendants argue that most federal courts to have considered the issue have determined that the term "public entity" does *not* include a private company acting pursuant to a contract to provide state services. The Second Circuit has held that a private hospital is not a public entity under Title II, even when it "carrie[s] out a public function pursuant to a contract with the City, in accord with City rules, and under the direction of City employees." *Green v. City of New York*, 465 F.3d 65, 78-79 (2d Cir. 2006). In *Green*, the court noted that the word "instrumentality" is susceptible to more than one interpretation. Quoting Webster's Third New International Dictionary, the court stated that the term could mean either (1) "something by which an end is achieved" or (2) "a part, organ, or subsidiary branch, esp. of a governing body." *Id.* at 79. If the former interpretation were correct, the hospital could be considered an instrumentality of the state, whereas the latter interpretation would preclude application of Title II. *Id.*

The court resolved the question by turning to a canon of statutory construction: that a "statutory term 'gathers meaning from the words around it.'" *Id.* (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)). The words surrounding "instrumentality" in the statute are "department," "agency," and "special purpose district." The *Green* Court noted that "[a]gencies and departments are units of a governmental entity while a special purpose district, as least in New York, is understood to mean a district set up by a municipality to serve certain needs such as sewer, drainage, parking, and the like." *Id*. The court reasoned:

**MEMORANDUM DECISION AND ORDER - 5**

> Each of the entities listed other than "instrumentalities" is thus a creature of the municipality or state whose ends it serves. We therefore conclude that "instrumentality" is likewise best read as referring to a creature of a state or municipality. A private hospital performing services pursuant to a contract with a municipality even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity.

*Id*.

Four years after *Green*, in *Edison v. Douberly*, 604 F.3d 1307, 1308, 1310 (11th Cir. 2010), the Eleventh Circuit relied primarily on the Second Circuit's reasoning to determine the ADA question in a private prison case, even though *Green* had involved a hospital and not a private prison. In a 2-1 decision, the Eleventh Circuit held that a private prison management corporation operating a state prison is not a public entity for purposes of Title II of the ADA. The Eleventh Circuit, like the Second Circuit, looked to the plain language of the statute "as assisted by the canons of statutory construction" and held that "the term 'instrumentality of a State' refers to governmental units or units created by them." *Id.* at 1310.

Agreeing with the *Green* Court, the *Edison* Court noted that the private hospital in *Green* was not a governmental unit, but "a parallel private entity." 604 F.3d at 1309-10. The *Edison* Court reasoned:

> Even where such a private entity contracts with a government to perform a traditional and essential government function, it remains a private company, not a public entity. A private contractor does not, the court held, become liable under Title II merely by contracting with the State to provide governmental services, essential or otherwise.

**MEMORANDUM DECISION AND ORDER - 6**

604 F.3d at 1310.[1]

The Eleventh Circuit bolstered its holding by recognizing that "[a]ll of the courts that have considered this question have come to the same conclusion." *Id.* (referring to *Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008); *Hahn ex rel. Barta v. Linn County*, 191 F. Supp. 2d 1051, 1055 (N.D. Iowa 2002); *O'Connor v. Metro Ride, Inc.*, 87 F. Supp. 2d 894, 900 (D. Minn. 2000); and *Doe v. Adkins*, 674 N.E. 2d 731, 735 (Ohio Ct. App. 1996)).

As recognized by the Eleventh Circuit in *Edison*, nearly every district court confronting the issue has held that a private entity does not become a public entity by providing services pursuant to a contract with the state. The District Court for the Eastern

---

[1] Judge Barkett's dissent in *Edison* has an appealing ring of practicality to it; however, in the end, it is difficult to square with the plain language of the statute. He argues that the majority "conflate[d] government *contracting* with government *function*." *Id.* at 1311 (Barkett, J., dissenting). In contrast to the majority's reasoning, the dissent saw an

> extremely significant distinction between a private company that can lawfully perform a function without state involvement and one that cannot. It is simply not possible for any entity to lawfully operate a prison without authorization from and a contract with the state. Unlike hospitals, which can be operated on behalf of the government through a contractual agreement or can be operated independently, prisons can *never* be operated independently of the government.

*Id.* The dissent agreed "that contracting with the government to provide services does not, *by itself*, make a private company subject to Title II of the ADA." *Id.* at 1312 (emphasis added). However, the dissent would have held that "when a company *takes the place of the state* in performing a function within the *exclusive* province of the state, that company cannot be permitted to avoid the requirements of the law governing that state function." *Id.* (second emphasis added).

**MEMORANDUM DECISION AND ORDER - 7**

District of Michigan determined that Correctional Medical Services, a private company providing health care to prisoners, was not an instrumentality of the state in *Cox v. Jackson.* 579 F. Supp. 2d at 852. The *Cox* Court adopted the rationale of other courts in holding that "[a] private contractor does not become a 'public entity' under Title II merely by contracting with a governmental entity to provide governmental services." *Id*.

Similarly, in *O'Connor v. Metro Ride, Inc.*, the District of Minnesota observed that "Plaintiffs have cited no case, and this Court is not aware of one, finding that a private, for-profit corporation–even one that contracts with a public entity–could be subject to liability Under Title II." 87 F. Supp. 2d at 900. *See also Obert v. The Pyramid*, 2005 WL 1009567 (W.D. Tenn. 2005) (private company could not be sued under Title II where although it was paid by the government for its management services and the government supplied police officers to aid in event parking, the company's employees were not considered government employees and it was not governed by a board elected by the voters or appointed by elected officials.); *Castle v. Eurofresh, Inc.*, 734 F. Supp. 2d 938 (D. Ariz. 2010) (company to which the state contracted out prisoner's labor was not a public entity because contractual relationships between private and government entities are insufficient to render the private entities instrumentalities under Title II); *Gonzalez-Jarquin v. Corrections Corp. of America*, 2008 WL 3285764, *1 (S.D. Ga. Aug. 8, 2008) (unpublished) (holding that CCA is not a public entity under Title II) (relying on *Maringo v. Warden, Corrections Corp. of America*, 2008 WL 2477582, at *1 (5th Cir. 2008) (unpublished)).

**MEMORANDUM DECISION AND ORDER - 8**

The sole court deciding the issue the other way is the District of Maine. That court allowed a plaintiff to pursue a Title II claim against a private company providing health care at a county jail, stating that the company's care constituted "a program or service" of the jail. *McNally v. Prison Health Svcs.*, 46 F. Supp. 2d 49, 58 (D. Me. 1999). The *McNally* Court focused its attention solely on the statute's wording "services. . . by a public entity," reasoning (without explanatory analysis) that this term could encompass both public and private entities providing "services" to public entities; however, such an approach seems to ignore the comprehensive statutory analysis of the cases cited above. In addition, *McNally* relies on *Gorman v. Bartch*, 152 F.3d 907, 912 (9th Cir. 1998), a case where a municipal police department provided for transportation of arrestees, which was deemed a "service," but where no private entity question was involved.[2]

Finally, the Court notes that, while the Ninth Circuit has held that a private physician and non-profit health care corporation's provision of health care to a county detention facility constituted state action under 42 U.S.C. § 1983 for purposes of constitutional violations, *Jensen v. Lane County*, 222 F.3d 570, 574 (9th Cir. 2000), the language of § 1983 addressing proper defendants– a "person'" who is "acting under color

---

[2] In another case, the District of Maine court refused to decide this difficult issue (concluding instead that the plaintiff had not stated an ADA claim), but that court stated in dicta that "providing catering services in a National Park, the example often given of a private entity contracting with the Government and subject to suit only under Title III, seems to me to be substantially different than contracting with the State to assume its constitutional burden of providing for an inmate's basic human needs." *Hamlin v. Prison Health Svcs., Inc.*, 2004 WL 2980749, *10 (D. Me. Dec. 22, 2004), *Report and Recommendation Adopted by* 2005 WL 81612 (D.Me. Jan. 12, 2005) (unpublished).

**MEMORANDUM DECISION AND ORDER - 9**

of state law"– is distinctly different from, and susceptible to broader interpretation than, the statutory definitions included in the ADA, as described above.

The Court agrees with the *Green* court and with the *Edison* majority that the string of terms provided in the statute demonstrates that the statute was intended to include only state entities and instrumentalities created by the state. Private contractors do not fit within the strict definition of the statute. The *Edison* dissent has practical appeal–because private contractors cannot imprison people for profit except under contract to the state–but because Congress did not include private entities in Title II (as it did in Title III), this Court is not at liberty to amend the statute.

Is Plaintiff without a remedy? Not altogether. In *James v. Peter Pan Transit Management, Inc.*, 1999 WL 735173 (E.D.N.C. 1999), a well-reasoned Memorandum and Recommendation, the Magistrate Court analyzed just such a dilemma, where the City had requested dismissal of Title II claims against it because a private contractor, not the City, actually provided the service that was at issue:

> When a public entity contracts with a private entity to provide a public service, the public entity must ensure by contract that the private entity will provide the service in accordance with title II. *See id.* at 7, Illustration 1.
>
> * * *
>
> The City offers no support for its contention that a public entity is relieved of its ADA obligations when it contracts with a private entity to provide a public service. Nor does it provide support for its argument that a public entity fulfills its title II obligations by entering into a contract with a private entity that requires the private entity to meet all title II requirements. A public entity must not only ensure by contract that the private entity with whom it contracts complies with title II, but further, must ensure that the

**MEMORANDUM DECISION AND ORDER - 10**

> private entity complies with the contract. *See id.; see also* 28 C.F.R. §
> 35.130(b)(1) (1997) (providing that "a public entity may not discriminate "
> directly or through contractual, licensing, or other arrangements, on the
> basis of disability") (emphasis added).
>
> Therefore, the undersigned concludes that the City is not relieved of its title
> II obligations merely because Peter Pan is an independent contractor.

1999 WL 735173 at *9.[3]

In this action, Plaintiff has also sued the IDOC and the Idaho Commission of Pardons and Parole, although his remedies may be limited. "Compensatory damages are not available under Title II of the ADA absent a showing of discriminatory intent." *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). Therefore, it appears that Plaintiff can maintain a Title II cause of action against the IDOC Defendants, rather than CCA, for the alleged ADA violation, but to prevail on a damages claim, he will have to show a discriminatory intent.

Accordingly, the CCA Defendants' Motion to Dismiss will be granted, with Plaintiff's Title II claim for damages against the IDOC Defendants remaining.

**4.      Discussion of Injunctive Relief Claims**

It is undisputed that Plaintiff was transferred out of ICC in October of 2009 and has since been paroled. As the Ninth Circuit explained, "when a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility." *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001). A transferred inmate can avoid a

---

[3] The case has no reported history after this Memorandum and Recommendation was issued.

dismissal for mootness only if he can show that his claim is capable of both repetition and evading review.

There is a two-prong test for this exception to the mootness doctrine:

> The capable of repetition, yet evading review exception to the mootness doctrine is limited to extraordinary cases where two elements combine: (1) the challenged action is of limited duration, too short to be fully litigated prior to its cessation or expiration; and (2) there is a *reasonable expectation* that the same complaining party will be subjected to the same action again.

*Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985) (emphasis added). Plaintiff argues that "the transferring of any disabled person from a non-complying facility should not be considered as a resolution to any discrimination violation" and that Defendants are relying upon "loopholes" to "avoid addressing the needs of all disabled persons." (Response to Defendants' Motion at 3, Dkt. 45.)

Plaintiff's concerns are understandable, but federal courts do not have jurisdiction over moot questions and are powerless to consider such issues. *Tate v. Univ. Med. Ctr. of S. Nev.*, 606 F.3d 631, 634 (9th Cir. 2010). It is not reasonable to expect or to assume that Plaintiff will violate his parole and once again find himself incarcerated at ICC. Plaintiff's claims for injunctive relief are therefore moot as to all Defendants (including the IDOC Defendants).

5. **Discussion of Individual Capacity Claims Against Defendant Valdez**

Under Title II, plaintiffs may not sue individual defendants in their personal capacities, but must instead sue the state, state entities, or defendants in their official

**MEMORANDUM DECISION AND ORDER - 12**

capacities. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187 (9th Cir. 2003). Thus, the Court will dismiss Plaintiff's ADA claims against Defendant Valdez in his individual capacity.

## PLAINTIFF'S MOTION FOR SANCTIONS

On February 19, 2010, the Court ordered all Defendants to "produce all information and documentation within the broad scope of discovery relevant to Plaintiff's claims under Rule 26(a)." (Order at 5, Dkt. 37.)[4] Plaintiff alleges that in response to this Order, the CCA Defendants "continue to mail repetitive copies of documents that were sent in the initial request of discovery," and the IDOC Defendants "mailed photocopied documentation of a list of employees who have absolutely nothing to do with any 'T.C.' program." (Plaintiff's Motion for Sanctions at 2, Dkt. 40.)

The Court has reviewed Defendants' responses and disagrees with Plaintiff that

---

[4] The Order covered information regarding the following topics:

> the mental health training credentials of the persons working in the TC program; the mental health training credentials of persons who make the determinations of whether inmates with mental health diagnoses can be placed in the TC program; the mental health training credentials of persons who monitor the mental health of those inmates permitted to proceed in the TC program; and policies, guidelines, or other documents showing how the prison provides inmates who have received mental health diagnoses with equal access to programs required for parole eligibility (including whether the programs are reasonably modified for such inmates), alternative ways to qualify for parole, or other information or documents bearing on how the prison complies with the ADA as it relates to the factors of inmates with mental illness, the TC program, and parole eligibility.

**MEMORANDUM DECISION AND ORDER - 13**

those responses should expose Defendants to sanctions. Sanctions under Federal Rule of Civil Procedure 37 are warranted "only in extreme circumstances," when a party has disobeyed a court order "due to willfulness, bad faith, or fault of the party." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (internal quotation marks omitted). There is simply no evidence that any of the Defendants acted in such a manner.

## CONCLUSION

CCA is a private prison management corporation that is not covered by the statutory language of Title II of the ADA. Therefore, the Motion to Dismiss will be granted as to Plaintiff's claims against CCA. All of Plaintiff's injunctive claims are moot because there is no reasonable expectation that he will be re-incarcerated at ICC. In addition, Defendant Valdez cannot be sued in his individual capacity because he is an individual and not a "public entity" under the ADA. Finally, the Court will deny Plaintiff's Motion for Sanctions because he has submitted no evidence that Defendants acted willfully or in bad faith in providing the discovery responses.

## ORDER

**IT IS ORDERED:**

1. The CCA Defendants' Motion to Dismiss (Dkt. 42) is GRANTED.
2. Plaintiff's Motion for Sanctions (Dkt. 40) is DENIED.
3. Plaintiff and the IDOC Defendants shall until **March 31, 2011**, in which to file dispositive motions, if any, on the remaining claims.



DATED: **March 10, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 15**